NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0231n.06

No. 19-4134

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PAUL HENDERSON, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**FILED**
Apr 28, 2020
DEBORAH S. HUNT, Clerk

BEFORE:     DAUGHTREY, GIBBONS, and MURPHY, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  Defendant Paul Henderson appeals the judgment of the district court sentencing him to 14 months' incarceration for violating three conditions of his supervised release.  Henderson argues that the district court failed to ensure that he knowingly and voluntarily admitted to an allegation that he possessed scheduled drugs and drug paraphernalia.  The defendant thus claims that the district court should have conducted an evidentiary hearing to determine his culpability regarding that violation.  To the extent that Henderson can establish error in this matter, such error was harmless and did not affect the sentence imposed upon him.  We thus affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Henderson pleaded guilty in federal district court to distribution of crack cocaine. The district court sentenced him to serve 52 months in prison, the federal sentence to commence after completion of service of an Ohio state sentence, and to be followed by three years of

supervised release. Pursuant to the provisions of 18 U.S.C. § 3582(c)(2), that 52-month sentence later was reduced to 42 months, and Henderson began serving the supervised release portion of his sentence on January 25, 2018.

In July 2019, Henderson's probation officer reported that the defendant had left the jurisdiction without permission and had tested positive for cocaine use during a random drug screen. As a result, the district court ordered Henderson to submit to location monitoring for 90 days starting August 6, 2019, meaning that he was required to obtain permission from his probation officer to leave his residence for any purpose other than for work, to obtain medical treatment, or to attend religious services. Other conditions of supervised release previously imposed upon Henderson—including not possessing a firearm or ammunition, not possessing any illegal controlled substance, participating in drug treatment and testing, participating in mental health testing, working toward a Certificate of General Educational Development (GED), avoiding all contact with gang members, and submitting to searches of his person and residence "based upon reasonable suspicion of contraband or evidence of a violation of a condition of release"—remained in effect.

Unfortunately for Henderson, his probation officer filed a second violation report in September 2019, this time outlining four violations of the terms of the defendant's supervised release. Violation 1 alleged that "Henderson made numerous unauthorized stops since being enrolled in the location monitoring program." Violation 2 alleged that "Henderson failed to enroll in GED courses since beginning his term of supervised release." Violation 3 alleged that, during a search of Henderson's residence, law enforcement officers found drugs and drug paraphernalia. And finally, Violation 4 alleged that, during that same search of Henderson's residence, officers recovered a revolver and 46 rounds of ammunition. The violation report set forth the maximum

statutory penalty for the violations, as well as noting that the applicable United States Sentencing Guidelines range of punishment, if the district court were to find that all the violations occurred, would be 21–27 months.

At the hearing convened to determine whether Henderson violated the terms of his supervised release, defense counsel announced to the district court that "Mr. Henderson would admit as to violations 1, 2, and 3, and he is denying as to violation 4, which is the firearm and ammunition [allegation]." After hearing sworn testimony from Henderson's probation officer regarding the search of the defendant's residence, the district court noted that "the ammunition and the handgun were found in an unoccupied room. We know that the home is owned by someone else, and that the owner has access to the house." Consequently, the district judge concluded that "the Court can't say by a preponderance of the evidence that the ammunition and firearm are, in fact, [the defendant's]." The district judge thus stated, "I find Mr. Henderson to be in violation of supervised release as to violations 1, 2, and 3. I find all three of them to be a grade C violation, and with a Criminal History Category of VI, we are looking as an advisory Sentencing Guideline[s] range of 8 to 14 months."

When given the opportunity to address the district court prior to imposition of sentence, Henderson confusingly stated, "I don't know anything about any guns or drugs being in the house," before announcing, "I admit I did eight, 1, 2, and 3 I did; I honestly did. I didn't get my GED because I was working two jobs."[1] Then, Henderson again admitted to violating the location-monitoring term of his supervised release before claiming, "But I ain't do that other stuff, Ms. Gaughan. I ain't do the other stuff."

---

[1]Because Henderson's admission that "I did eight" seems incongruous and has no relevance to any other evidence or information in the record, it is possible that the reference is a result of a transcription error.

Based upon the information before it, the district court then sentenced Henderson "to the custody of the Bureau of Prisons for a period of fourteen months. Upon release, Defendant is placed on 24 months of supervised release with the same conditions."

## DISCUSSION

We have held explicitly that the full panoply of protections afforded by Federal Rule of Criminal Procedure 11(b) when accepting a guilty plea from a criminal defendant does not apply in supervised release proceedings. *United States v. Melton*, 782 F.3d 306, 311–12 (6th Cir. 2015). Instead, revocation proceedings are governed by the provisions of Federal Rule of Criminal Procedure 32.1(b), which provides:

> Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:
> (A) written notice of the alleged violation;
> (B) disclosure of the evidence against the person;
> (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;
> (D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and
> (E) an opportunity to make a statement and present any information in mitigation.

On appeal, Henderson does not dispute that he knowingly and voluntarily admitted to the first two violations alleged by the probation officer—that he visited sites not authorized by the district court's location-monitoring order without obtaining the permission of the probation office and that he failed to take actions toward obtaining his GED. Not only did defense counsel, without objection from Henderson, advise the district court at the start of the revocation hearing that Henderson admitted those two violations, but the defendant himself admitted in open court that he "didn't get [his] GED because [he] was working two jobs" and that he violated the conditions of his house arrest to spend time with his children and to watch his children participate in athletic

events.  The district court thus did not err in finding, without taking additional evidence, that Henderson violated at least two conditions of his supervised release.

Henderson also contends, however, that the record contains no evidence that he knew of his Rule 32.1 rights or that anyone informed him of the possible sentence he faced for violating the terms of his supervised release.  Contrary to the defendant's assertion, the record on appeal establishes that Henderson's Rule 32.1(b) rights were protected.  He received written notice of the allegations against him through receipt of the violation report, and that report detailed both the evidence against him and the potential penalties he faced.  Henderson appeared, with counsel, at the hearing, challenged the testimony of the witness against him, and convinced the district court that the most serious allegation could not be proven by a preponderance of the evidence.  He also was granted the opportunity to address the court directly and availed himself of that chance.

The record also establishes that Henderson was made aware on numerous occasions of the sentence facing him should the district court determine that he indeed violated the terms of his supervised relief.  As noted, the violation report listed the applicable Guidelines sentencing range should Henderson be found to have committed the most serious alleged violation—possession of a firearm and ammunition—and explained in detail the rationale for arriving at that sentencing range.  Moreover, twice at the revocation hearing, before the district court imposed its sentence, mention was made of the reduced Guidelines range to which Henderson was subject given the fact that the firearms violation could not be established by a preponderance of the evidence.  First, while arguing that the charge regarding possession of a firearm should be dismissed, defense counsel noted that the remaining violations were Grade C violations that would change the potential sentencing range to 8-14 months.  Then, prior to entertaining argument on sentencing,

the district judge noted again that the appropriate sentencing range was 8-14 months. Thus, there is no merit to either of these challenges to the district court's sentencing decision.

Henderson nevertheless maintains that the sentence imposed upon him is improper because he did not admit that he possessed scheduled drugs or drug paraphernalia. Thus, he argues that the district court erred in failing to take evidence on the validity of that particular violation allegation. As we stated in *Melton*, however, "a court's acceptance of an admission to a supervised release violation, or stated differently, a court's acceptance of a waiver of the right to contest the revocation of supervised release, is not governed by [the stringent requirements of] Federal Rule of Criminal Procedure 11." *Melton*, 782 F.3d at 311. "Instead, the accused's admission or waiver need only be knowing and voluntary under the totality of the circumstances." *Id.*

Before the district court, Henderson did state, "I don't know anything about any guns or drugs being in the house." He also claimed, after admitting to violating the conditions of his house arrest, "But I ain't do that other stuff, Ms. Gaughan. I ain't do the other stuff." Contradicting those denials, however, is the defendant's unambiguous admission that "1, 2, and 3 I did; I honestly did." Because Henderson obviously was conversant with the information contained in the probation officer's violation report, it also is telling that he raised no objection when, within the first moments of the hearing, defense counsel responded to an inquiry from the district judge by stating, "Your Honor, Mr. Henderson would admit as to violations 1, 2, and 3, and he is denying as to violation 4, which is the firearm and ammunition." Additionally, after the probation officer testified about the search of Henderson's home and the discovery of marijuana and a marijuana pipe in the defendant's bedroom and oxycodone pills in another room, the following conversation occurred between the district court and defense counsel, again without objection or contradiction from Henderson:

| THE COURT: | Okay. So am I correct that the Defendant admits to violation No. 1? |
|---|---|
| MR. MISIEWICZ: | Yes[,] your Honor. |
| THE COURT: | Number 2? |
| MR. MISIEWICZ: | Yes, your Honor. |
| THE COURT: | Number 3? |
| MR. MISIEWICZ: | Yes, your Honor. |
| THE COURT: | Denies number 4. |
| MR. MISIEWICZ: | Correct. |

Without question, Henderson's on-again, off-again statements regarding his admissions of guilt are troublesome when attempting to ascertain whether, under the totality of the circumstances, he indeed admitted to violation 3 and waived the right to have an evidentiary hearing on that allegation. Even if the district court erred in concluding that such an admission had been made, however, we conclude that any such error is harmless. Pursuant to the provisions of § 7B1.1(a)(3) of the United States Sentencing Guidelines, violations 1, 2, and 3 each would be considered a Grade C violation. Consequently, because Henderson is a criminal-history-category VI offender, the sentencing range for his violations, even without consideration of the drug violation, is 8-14 months. *See* U.S.S.G. § 7B1.4(a). Because the district court imposed a sentence within that range, Henderson was not prejudiced by any possible error committed during the revocation hearing.

**CONCLUSION**

For the reasons discussed, even if the district court erred in this matter by failing to hold an evidentiary hearing on the allegation that Henderson was in unlawful possession of scheduled drugs, that error was harmless. Even absent a finding that the defendant violated the terms of his supervised release by being in possession of those substances, other violations to which Henderson readily admitted subjected him to the same additional prison sentence he received. We thus **AFFIRM** the judgment of the district court.